Henry B. Graves and Sanford N. Gordon, both of Detroit, Mich. (Henry B. Graves, Sanford N. Gordon, and Charles H. Hatch, all of Detroit, Mich., on the brief), for appellant.

Rudolph J. Inman, of Port Huron, Mich. (Pepper & Inman and Patrick H. Kane, all of Port Huron, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

## MARTIN v. CITY OF PORT HURON.
### No. 8076.

Circuit Court of Appeals, Sixth Circuit.

May 9, 1940.

ARANT, Circuit Judge.

Appellant brought an action at law to recover for architectural services rendered appellee, a municipal corporation. The case was tried without a jury. Upon motion by appellee, appellant was awarded judgment for the amount appellee admitted to be due. Jurisdiction rests upon diversity of citizenship.

The erection of the Port Huron Hospital was begun some years prior to 1935. It was financed by private subscriptions and

privately owned. The depression came, however, and the hospital was only partially completed, when an arrangement was made, in 1935, between the owners and appellee, whereby appellee acquired title to the unfinished hospital and undertook to complete it with the aid of funds provided by the Federal Emergency Administration of Public Works, known as the PWA. In the negotiations, the treasurer of the Port Huron Hospital, E. W. Kiefer, represented the owners, and appellee was represented by Patrick H. Kane, the city attorney.

In September, 1935, appellee applied to the PWA for a grant of funds. At the request of Kiefer and Kane, made on October 14, appellant, who had been architect from the beginning, prepared the necessary plans and specifications for completion of the hospital, in the following particulars: A—General Work; B—Plumbing; C—Heating, Ventilating and Temperature Control; D—Electrical Wiring; E—Elevators; F—Refrigeration; G—Kitchen Equipment, Sterilizers, Surgical Equipment, Radiographic and Physio-Therapy installation; H—Furnishings, Linen, Bedding, China, Glassware and Silver; obtained the services of a medical consultant as to the equipment called for in Items G and H; and associated with him W. H. Wyeth, an architect of Port Huron.

On October 19, on the basis of the plans and specifications prepared by appellant, the PWA offered a grant, which appellee accepted on October 31. On November 25, appellee, by formal resolution, appointed Kane and Kiefer to represent it in connection with the Hospital project "and authorized them to take any and all steps and perform any and all acts necessary to the completion of said project." Bids from contractors and material men were opened on December 31. In the presence of appellant, the lowest bids on Items A to F, inclusive, totalling $178,479, were approved by the PWA, accepted by appellee, and contract awards were authorized; but the bids for Items G and H were rejected, inasmuch as appellee then had only $180,000, including the PWA grant.

There was no contract at this time between appellant and appellee, but it was apparent that the limited funds then in sight would not allow payment of the 7% fee provided for in the standard form of agreement issued by the American In-stitute of Architects for use when a percentage of the cost of the work determines the architect's compensation. Kiefer and appellant discussed the fee on January 11, 1936, but were unable to agree, and appellant returned to Chicago. Failure seemed to threaten the project, for the grant would expire in two or three days. Kiefer talked with appellant further on long distance, and evidently some agreement was reached, for appellee immediately thereafter formulated and attached to the standard form of agreement, in place of paragraph 5, which dealt with payments, the following provision as to fees:

"The total fee applicable to contract awards now contemplated shall be Six Thousand Five Hundred Dollars ($6,500.-00). Payments on account of architect fees shall be made to the architect as principal as hereinafter described and the division of said fee with associate is based on payment in full having already been made on plans and specifications prior to PWA application, same being herein acknowledged. And further that any services or any claims for earned fees against Owner for past services or expense of associate architect shall be and are herein waived.

"Payments by Owner on account of architect's fee and the application of same by Architect shall be as follows:

"$2,000 forthwith to the principal architect;
500 to the associate architect from advance grant when same is available;
$3,437.50 to associate architect as the work progresses;
462.50 to the principal architect upon substantial completion."

This document had been signed by appellant in November, 1935, and sent to appellee "to have the proper terms embodied in it." After inserting the fee provision quoted above, appellee also signed the document and sent it to the PWA, which approved it. Copies were sent to appellant on March 26, 1936; until that time, appellant asserts, he never saw the completed document. He does not claim that it was not contemplated that appellee should fill in the terms of his compensation; nor is there any suggestion that he took any exception to the terms inserted when they came to his attention.

Work was in progress when, in March, 1937, the PWA granted appellee an additional $28,542.44, with which the equipment called for in Items G and H was purchased. Appellee exercised its option

to handle these purchases without further architectural services.

Appellant, in his first count, seeks recovery upon the written contract aforesaid; in his second, upon an implied contract, relying upon what he terms "the doctrine of implied liability." His bill of particulars, with claims numbered for convenience of reference, is as follows:

> "Contract amount as provided in Owner-Architect agreement of January 14, 1936 $6500.00
>
> Credit by cash......... $2000.00
>
> 1. Allotment to W. H. Wyeth as provided $3937.50, $5937.50, $ 562.50
> 2. Reimbursement for cost of transportation and living incurred while traveling, subsequent to PWA application, in discharge of duties connected with the work, as per bill rendered........ 256.57
> 3. 7% as provided in Owner-Architect agreement on change orders authorized or in preparation................. 903.17
> 4. Services prior to August 12, 1936, in the preparation of specifications, drawings, diagrams and schedule for Kitchen Equipment, Sterilizers, Surgical Equipment, Radiographic and Physio-Therapy installation, by order of the Commission..................... 1438.00
> 5. Services prior to Aug. 12, 1936, in the preparation of detailed schedules of Furnishings, Linen, Bedding, China, Glassware and Silver................. 350.00
> 6. Complete specifications contemplating the reinstatement of former contracts for General Work, Heating and Ventilating, Plumbing and Electrical; ordered by the Commission and subsequently abandoned..................... 600.00[1]
> 7. Additional blue prints furnished at the request of E. W. Kiefer.............. 63.00
> _____
> $4173.24
>
> Interest at 5% per annum from July 1, 1937."

The record here presents no question as to the validity of the written agreement; only its interpretation is involved.

Appellee admits indebtedness for Claim 1, the balance due "upon substantial completion" of the hospital.

As to Claim 3, appellee admits liability for 7% of change orders made since execution of the contract, or $318.02. The Court was of the opinion that appellant failed to establish any larger obligation with respect to that claim.

On the theory that Claims 2, 4, 5, 6 and 7,—which were for services rendered or expenses incurred prior to execution of the contract,—were merged in the written contract, the Court excluded all evidence offered to show their value. When appellant rested, the Court granted appellee's motion that appellant be awarded a judgment for $843.52, together with costs, all of which had been paid into Court.

Appellant contends that the $6,500 fee stipulated was for services in connection with Items A to F only. He relies upon the provision that "The total fee applicable to contract awards now contemplated shall be Six Thousand Five Hundred Dollars ($6,500.00)." At the very least, his argument runs, the words "now contemplated" render the provision ambiguous, and the ambiguity should be resolved against appellee, who drafted the provision.

Appellee, on the other hand, contends that the $6,500 fee covered not only services to be rendered in connection with Items A to F, change orders excepted, but also all services that had been rendered prior to execution of the contract. It relies upon the following provision: "And further that any service or any claims for earned fees against owner for past services or expense of associate architect shall be and are herein waived."

It may be granted that the sentence relied upon by appellant, standing alone, would be somewhat ambiguous. But the sentence following it acknowledges payment in full "on plans and specifications prior to PWA application." And the next sentence, mainly relied upon by appellant, which speaks as of January 14, 1936, waives "any service or any claims for earned fees against Owner for past services or expense of associate architect." If the entire paragraph is read together in the light of the undisputed facts, we are of the opinion that its meaning is clear and the District Court committed no error in denying all appellant's claims for services rendered or expenses incurred prior to execution of the written contract.

"It is an elementary rule that, where there is an express agreement between parties covering the subject-matter, the law will not imply one." Cashin et al. v. Pliter, 168 Mich. 386, 391, 134 N.W. 482, 484, Ann.Cas. 1913C, 697. Since each of the claims set forth in appellant's bill of particulars was the subject matter of an express contract, there can be no recovery therefor upon an implied contract, as sought in appellant's second count.

Judgment affirmed.

---

[1] This claim was abandoned.