**NORTHERN NATURAL GAS COMPANY, DIVISION OF INTERNORTH, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**NORTHERN NATURAL GAS COMPANY, DIVISION OF INTERNORTH, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 84–1516, 85–1045.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1985.

Decided Dec. 31, 1985.

As Amended Dec. 31, 1985.

Rehearing En Banc Granted March 27, 1986.\*

David B. Ward, Washington, D.C., with whom Henry C. Rosenthal, Jr., Omaha, Neb., and Allan W. Anderson, Jr., Washington, D.C., were on the brief, for petitioner in Nos. 84–1516 and 85–1045.

Joel M. Cockrell, F.E.R.C., with whom Barbara J. Weller, Deputy Sol., F.E.R.C., Washington, D.C., was on the brief, for respondent in Nos. 84–1516 and 85–1045.

Christopher K. Sandberg, St. Paul, Minn., for intervenor Minnesota Dept. of Public Service in Nos. 84–1516 and 85–1045.

William T. Miller and Susan N. Kelly, Washington, D.C., were on the brief for intervenor Northern States Power Co. in Nos. 84–1516 and 85–1045.

Edward J. Brady entered an appearance for Michigan Power Co., intervenor in No. 84–1516.

Edward J. Grenier, Washington, D.C., entered an appearance for Process Gas Consumers Group, intervenor in No. 84–1516.

Before WRIGHT, BORK and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Northern Natural Gas Company challenges two conditions attached by the Federal Energy Regulatory Commission to a certificate of public convenience and necessity issued to Northern pursuant to Section 7 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717f (1982), authorizing it to sell natural gas to certain customers under discounted rates. The first condition requires Northern to credit all recoveries of fixed costs obtained from these discount sales to its other, non-discount customers. The second requires Northern, after its next rate case, to track its revenues and credit any net overrecovery of fixed costs to non-discount customers. The issues we address are whether the first of these conditions falls outside the scope of the Commission's authority in a Section 7 certification proceeding as delineated by this court's opinion in *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C.Cir.1979), *cert. denied*, 449 U.S. 889, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980); and whether the second is ripe for review.

## I

In April of 1983, the Commission approved an uncontested settlement establishing Northern's general rate structure for natural gas sales. *Northern Natural Gas Co., Division of InterNorth, Inc.*, 23 F.E.R.C. (CCH) ¶ 61,198 (Apr. 28, 1983). Since that time suppliers of alternate fuels in Northern's market area have priced their products at rates that are, for equivalent quantities of energy, below those provided in the settlement. Because many large-scale gas consumers have the capacity to switch to alternate fuels, Northern faces a potentially large loss of sales volume.

To meet this problem, Northern sought from the Commission a certificate of public convenience and necessity, authorizing it to sell natural gas at discounted (*i.e.*, below-

settlement) rates to its customers who possess alternate fuel capacity. Under the "flexible pricing schedules" that it proposed, these discount rates would recover all of the variable costs associated with the quantity of gas sold, but less than all of the fixed costs. Following a hearing on Northern's application, the opinion of the administrative law judge noted that a serious question was presented whether Northern's discount program constituted undue discrimination among customers in violation of the NGA, ch. 556, § 4(b), 52 Stat. 821, 822 (codified as amended at 15 U.S.C. § 717c(b) (1982)), since it proposed selling to similarly situated customers at disparate rates. The ALJ said that the program could be justified only if it resulted in net benefits for all such customers. He was of the view that any attempt to produce benefits for non-discount customers by lowering their rates (for example, by crediting a portion of discount sales revenues to costs borne by non-discount customers) was barred by *Panhandle*. He found, however, that even without such crediting the non-discount customers would benefit from the increased volume of gas sales—which would, among other things, reduce the gas-cost component of their rates by reducing the determinant of that component, Northern's average cost of gas. The ALJ approved Northern's application on an interim basis, subject to one principal condition: in Northern's *next* rate case, it would be required to track its revenues and credit any net overrecovery of fixed costs from discount sales to its non-discount customers. 26 F.E.R.C. (CCH) ¶ 63,071 (Feb. 24, 1984).

The Commission affirmed the ALJ's initial decision, but with one crucial modification. The Commission noted that, for the most part, non-discount customers would be helped by Northern's program only in the future, and expressed the view that they were entitled to a "more immediate benefit." In addition, the Commission apparently believed that Northern's revenues from non-discount customers would fully cover fixed costs,[1] wherefore any recovery of fixed costs from discount sales would constitute a "windfall." The Commission therefore added a further condition to the certificate: Northern would be required to credit all recovery of fixed costs from discount sales to its non-discount customers. 27 F.E.R.C. (CCH) ¶ 61,299, at 61,554 (May 25, 1984). On rehearing, the Commission rejected Northern's argument that *Panhandle* barred this condition. 28 F.E.R.C. (CCH) ¶ 61,230 (Aug. 21, 1984). Northern now appeals under the NGA, § 19, 15 U.S.C. § 717r.

II

We turn first to the condition added to the ALJ's disposition by the Commission, requiring Northern to credit all fixed cost recovery from present discount sales to its non-discount customers.

In *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C.Cir.1979), *cert. denied*, 449 U.S. 889, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980), we reviewed the Commission's attachment of a similar condition to a pipeline's application for a Section 7 certificate authorizing it to use idle system capacity to transport another company's natural gas. Because the pipeline's existing gas rates had been set at levels deemed sufficient to compensate the pipeline for its costs, the Commission believed that any revenues received from the transportation service would constitute a double recovery. The Commission therefore attached to its authorization a condition requiring the pipeline to reduce the rates of its gas customers by crediting all transportation revenues to costs borne by them. In passing upon the validity of this condition, we acknowledged that the Commission is empowered by the NGA, § 7(e), 15 U.S.C. § 717f(e), to "attach to the issuance of the certificate ... such reasonable terms and conditions as the public convenience and necessity may require," including a rate ceiling for the new service, *see, e.g., Atlantic Refining Co. v. Public Service Com-*

---

1. It is not clear that belief was justified. Unquestionably, total sales *contemplated at the time of the settlement* were expected to cover fixed costs. But the whole basis of Northern's application was that the contemplated level of sales would not be reached, as fuel-switchable customers left the system. The sales to the remaining customers might well not cover fixed costs. Or to put the point another way, since the discount customers consisted of only preexisting customers the fixed-cost recovery from them would be largely if not entirely *identical to*, rather than *in addition to*, the fixed-cost recovery contemplated in the settlement. Our disposition of the case makes it unnecessary to consider whether this apparent shortcoming in the Commission's reasoning is an independent ground for reversing its order.

*mission,* 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). We concluded, however, that there was a fundamental distinction between imposing conditions on the terms of the proposed service itself and imposing conditions on the terms of services not directly before the Commission in the Section 7 certification proceeding. To permit the latter, we felt, would expand Section 7 beyond its intended purpose, into a means of circumventing the protections afforded to pipelines under the NGA's normal rate-adjustment provisions, Sections 4 and 5, 15 U.S.C. §§ 717c, 717d. *Panhandle,* 613 F.2d at 1129–33. Accordingly, we held that "[t]he Commission may not ... order adjustments in previously approved rates for services not before it in the certificate proceeding." *Id.* at 1133.

In its order denying rehearing and in this appeal, the Commission distinguished *Panhandle* on the basis that that case involved the flow-through of revenue between distinct classes of customers—transportation customers and gas-purchase customers—while this case involves customers of the same class. Thus, the Commission argues, here, unlike in *Panhandle,* the appellant's non-certificated sales were "before" the Commission in the Section 7 proceeding, since the reasonableness and nondiscriminatoriness of the discount-sale rates for which approval was sought hinged upon the non-discount rates to the same class of customer. In other words, Northern's general rate structure for gas-purchase customers was necessarily brought into question.

It would be idle to pretend that there is no force to this distinction. Once it is acknowledged that the Commission has authority to fix *some* rates under Section 7, *see Atlantic Refining, supra,* one is merely arguing over *how much* Section 7 will be permitted to override the purposes of Sections 4 and 5. Drawing the line at rates for the very services sought in the Section 7 proceeding is not inevitable (and not necessarily required by the result in *Panhandle*). A more intelligent reconciliation of the sections, the Commission suggests, would draw the line at rates which must be considered by the Commission in making the Section 7 rate determination. Obviously, the argument goes, the rates to Northern's non-discount customers had to be considered here, since the main issue was the

impact of the new service upon those rates and the existence or nonexistence of a benefit to those customers.

As elegant as the suggestion seems, we must reject it. The distinction the Commission would draw ultimately rests upon differences of degree rather than kind, and injecting it into our *Panhandle* analysis would pursue an illusory perfection at high cost in uncertainty and hence litigation. To some extent, the rates whose adjustment we disallowed in *Panhandle* had to be considered by the Commission as well. Without reference to those rates it would have been impossible for the Commission to make the requisite determination whether the rate level proposed in the Section 7 application would produce "a windfall for the natural gas company," *Atlantic Refining,* 360 U.S. at 390, 79 S.Ct. at 1254, or an "unreasonable difference in rates ... as between classes of service," NGA, § 4(b), 15 U.S.C. § 717c(b). In fact, we acknowledged in *Panhandle* that in a Section 7 proceeding *all* the applicant's rates are "before" the Commission:

[W]e do not mean to intimate that FERC may not take a company's overall rate structure into consideration in issuing certificate orders. It may evaluate that and myriad other factors as they bear on the public convenience and necessity.

613 F.2d at 1133. We are not inclined to commit ourselves to determining (and to condemn the industry to predicting our determination), case-by-case, which rates are "before" the Commission more than others. It is no solution to say that only rates to customers of "different classes" will be untouchable in a Section 7 proceeding, since in one sense (and the only sense that seems relevant for the purpose at hand) fuel-switchable gas purchasers and captive gas purchasers no more belong to the "same" class than do the gas-purchase customers and gas-transportation customers at issue in *Panhandle.*

In fine, we read *Panhandle,* as it was written, to proscribe the alteration, in a Section 7 proceeding, of "rates previously approved by the Commission for customers not receiving *the services to be certificated.*" 613 F.2d at 1130 (emphasis added; footnote omitted). The certification here

was for flexible-pricing services; the rates for customers receiving other services could not lawfully be altered. It may be true that the consequence of this holding, in the present case and in many others, will be to compel the Commission to reject innovative certification proposals that benefit some customers while leaving others at least no worse off. But since that is *always* the effect of *Panhandle*, it is an argument for overruling the case rather than a guide to interpreting it. Whatever its merits, *Panhandle* is the law of this circuit, and we are required to follow it unless and until it is reversed by the court en banc. *See Association of Civilian Technicians, Montana Air Chapter v. FLRA*, 756 F.2d 172, 176 (D.C.Cir.1985). We decline to pare it down in a fashion that would only spawn further litigation articulating and refining ineffable distinctions.

### III

■■ The second condition, imposed by the ALJ and affirmed by the Commission, requires Northern, *after its next rate case,* to credit any net overrecovery of fixed costs to its non-discount customers. Assuming, without deciding, that the imposition of this condition constitutes "final agency action," 5 U.S.C. § 704 (1982), *cf. Reynolds Metals Co. v. FERC*, 777 F.2d 760, 761–62 (D.C.Cir.1985), and that the dispute regarding it has not become moot,[2] we nonetheless find another jurisdictional impediment to our reviewing it. Judicial intervention at this stage would run afoul of the ripeness doctrine, which serves "to prevent the courts ... from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Application of that doctrine requires us to consider (1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding immediate judicial review. *Id.* at 149, 87 S.Ct. at 1515; *Air*

*New Zealand Ltd. v. CAB*, 726 F.2d 832, 837 (D.C.Cir.1984). On both counts, the present condition falls short. It is impossible to consider the validity of this preannounced term of the ratemaking order without considering the other terms that will accompany it. *See Reynolds Metals Co. v. FERC, supra,* at 762. If, for example, the future order establishes the contributions to fixed costs that must be obtained from non-discount customers without regard to the prospect of discount sales, then the condition *would* be necessary to prevent double recovery. Secondly, Northern will suffer absolutely no hardship until the condition is in fact imposed and becomes reviewable as part of the Commission's rate determination. The condition has no immediate application, nor does the announcement of its future application cause it to be "felt immediately by those subject to it in conducting their day-to-day affairs," in such fashion that "primary conduct is affected," *Toilet Goods Association, Inc. v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). *See Air New Zealand Ltd.*, 726 F.2d at 837–38. Thus, to intervene at this stage would be to "venture away from the domain of judicial review into a realm more accurately described as judicial preview. No roving preview function has been assigned to courts in the federal system." *Tennessee Gas Pipeline Co. v. FERC*, 736 F.2d 747, 751 (D.C.Cir.1984).

\*     \*     \*     \*     \*

For the reasons stated, we dismiss as unreviewable the petitioner's challenge to the future crediting condition, and vacate that portion of the Commission's order imposing the present crediting condition. Since it is substantially doubtful that the Commission would have approved Northern's Section 7 application without the condition we have vacated (its reasoning suggests that it might not have), we must remand the matter to the Commission for proceedings not inconsistent with this opinion. *See North Carolina v. FERC*, 730 F.2d 790, 795–96 (D.C.Cir.1984).

*So ordered.*

---

**2.** The Commission suspended, if it did not permanently terminate, the discount sales program by refusing Northern's recent request for extension. *Northern Natural Gas Company, Division*

of InterNorth, Inc., Docket No. CP83–14–103 (Oct. 25, 1985) (Order denying petition to amend certificate).

Before ROBINSON, Chief Judge, WRIGHT, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA, STARR, SILBERMAN and BUCKLEY, Circuit Judges.

ORDER

PER CURIAM:

The suggestions for rehearing *en banc* have been circulated to the full Court. Voting was called for and at least a majority of the judges of the Court in regular active service have voted in favor of the suggestions for the limited purpose of deciding whether the Court should reconsider its holding in *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C.Cir. 1979). Upon consideration of the foregoing, it is ORDERED, by the Court, *en banc*, as follows:

1. The suggestions for rehearing *en banc* are granted.

2. Part II of the Court's opinion of December 31, 1985, as well as the last paragraph of the opinion of the same date, are vacated.

3. The parties shall file 30 copies each of supplemental briefs directed to the question of whether this Court should continue to adhere to its decision in *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C.Cir.1979), and, if not, in what respects it should depart therefrom.