

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-28-2007

# Council Tree Comm v. FCC

Precedential or Non-Precedential: Precedential

Docket No. 06-2943

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Council Tree Comm v. FCC" (2007). *2007 Decisions.* Paper 318.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/318

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2943

———

COUNCIL TREE COMMUNICATIONS, INC.;
BETHEL NATIVE CORPORATION;
THE MINORITY MEDIA AND
TELECOMMUNICATIONS COUNCIL,

Petitioners

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

Respondents

CTIA-WIRELESS Association and T-Mobile USA, Inc.,

Intervenor

———

On Petition for Review of Orders of the
Federal Communications Commission
(FCC Nos. 06-52, 06-71 and 06-78)

———

Argued May 23, 2007

Before:  CHAGARES, HARDIMAN and TASHIMA,[*]
*Circuit Judges*.

(Filed: September 28, 2007)

Dennis P. Corbett, Esq. (Argued)
S. Jenell Trigg, Esq.
Leventhal, Senter & Lerman
2000 K Street, N.W.
Washington, DC 20006

*Attorneys for Petitioners*

Joseph R. Palmore, Esq. (Argued)
Samuel L. Feder, Esq.
Laurence N. Bourne, Esq.
Federal Communications Commission
Office of General Counsel
445 12th Street, S.W.
Washington, DC 20554

Robert B. Nicholson, Esq.
Robert J. Wiggers, Esq.
United States Department of Justice

---

[*] The Honorable A. Wallace Tashima, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Appellate Section
Room 3224
950 Pennsylvania Avenue, N.W.
Washington DC 20530

    *Attorneys for Respondents*

William T. Lake, Esq. (Argued)
Wilmer Cutler Pickering Hale & Dorr
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

Ian H. Gershengorn, Esq.
Jenner & Block
601 13th Street N.W.
Suite 1200
Washington DC 20005

    *Attorneys for Intervenor*s

---

## OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

This case involves a challenge to two orders of the Federal Communications Commission (FCC) enacting new rules

3

regarding competitive bidding for wireless communications spectrum licenses. Petitioners assert that the new rules are invalid and that an auction conducted pursuant to those rules must be nullified. For the reasons that follow, the petition for review must be dismissed because it is incurably premature.

I.

The Communications Act of 1934 directs the FCC to design a system to allocate spectrum licenses by "establish[ing] a competitive bidding methodology" via regulation. 47 U.S.C. § 309(j)(3). In doing so, the FCC shall seek to "promot[e] economic opportunity and competition and ensur[e] that new and innovative technologies are readily accessible to the American people by avoiding excessive concentration of licenses and by disseminating licenses among a wide variety of applicants, including small businesses, rural telephone companies, and businesses owned by members of minority groups and women." *Id.* § 309(j)(3)(B). Such businesses are known as "designated entities" or "DEs." *See* 47 C.F.R. § 1.2110(a). The FCC must ensure that DEs "are given the opportunity to participate in the provision of spectrum-based services, and, for such purposes, consider the use of tax certificates, bidding preferences, and other procedures," 47 U.S.C. § 309(j)(4)(D), and "require such transfer disclosures and antitrafficking restrictions and payment schedules as may be necessary to prevent unjust enrichment as a result of the methods employed to issue licenses and permits." *Id.* § 309(j)(4)(E).

4

On June 13, 2005, Petitioner Council Tree Communications, Inc. (Council Tree), a company organized to identify and develop investment opportunities for minority and women-owned businesses in the communications industry, wrote an *ex parte* letter to the FCC proposing changes to the then-existing competitive bidding regulations. In particular, Council Tree sought to prevent abuse of DE benefits by prohibiting those DEs affiliated with large incumbent wireless companies from receiving "bidding credits" at spectrum license auctions. These credits are discounts of 25% or 15% from a DE's winning bid.

On February 3, 2006, the FCC released a *Further Notice of Proposed Rulemaking in the Matter of Implementation of the Commercial Spectrum Enhancement Act and Modernization of the Commission's Competitive Bidding Rules and Procedures*, 71 Fed. Reg. 6992 (Feb. 10, 2006), which proposed and sought comment on modifications similar to those suggested in Council Tree's letter to the FCC.

After receiving over fifty comments and reply comments, the FCC released on April 25, 2006 and published in the Federal Register on May 4, 2006 a *Second Report and Order and Second Further Notice of Proposed Rulemaking* (Second Order), 71 Fed. Reg. 26,245 (May 4, 2006) (codified at 47 C.F.R. pt. 1). That Second Order adopted new rules that: (1) take bidding credit eligibility away from DEs that have certain material relationships with other entities; and (2) extend the repayment period to prevent the unjust enrichment of DEs that lose their eligibility after winning a license. Dissatisfied with these rules,

5

on May 5, 2006, Petitioners filed a petition with the FCC to reconsider the Second Order.

On June 2, 2006, the FCC released an *Order on Reconsideration of the Second Report and Order* (Reconsideration Order), 71 Fed. Reg. 34,272 (June 14, 2006) (codified at 47 C.F.R. pt. 1), to "clarif[y] certain aspects [and] address[] certain procedural issues" raised in Petitioners' petition for reconsideration. The Reconsideration Order did not expressly grant or deny the petition, but essentially rejected all of the arguments contained therein.

Instead of waiting for the FCC to publish its Reconsideration Order in the Federal Register, Petitioners filed a petition for review with this Court on June 7, 2006, along with an emergency motion to stay the effectiveness of the new rules and the auction of Advanced Wireless Services licenses (Auction 66), which would be conducted pursuant to the FCC's new rules.[1] Petitioners challenge those rules as: (1) not in accordance with the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)(3); (2) arbitrary and capricious under the relevant provisions of the Communications Act of 1934, 47 U.S.C. § 309(j), and the Telecommunications Act of 1996, 47 U.S.C. § 257; and (3) not in compliance with the Regulatory Flexibility Act, 5 U.S.C. §§ 601 *et seq.* They also seek to nullify the results of Auction 66. In addition to opposing each of these challenges, the FCC

---

[1] Auction 66 commenced on August 9, 2006 and ended on September 18, 2006.

argues that we lack jurisdiction over the petition, which was filed seven days before the FCC published its Reconsideration Order in the Federal Register on June 14, 2006. On June 29, 2006, a motions panel of this Court issued a per curiam Order denying Petitioners' emergency motion for stay.

## II.

We begin, as we must, with questions of jurisdiction: (1) whether Petitioners' petition for review is incurably premature; and, if so, (2) whether the motions panel's earlier per curiam Order vitiates that prematurity.[2]

### A. Incurable Prematurity

We have no jurisdiction to consider an incurably premature petition for review. *Tenn. Gas Pipeline Co. v. FERC*, 9 F.3d 980, 981 (D.C. Cir. 1993) (per curiam). A petition to review a non-final agency order is incurably premature. *See Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002). An agency order is non-final as to an aggrieved party whose petition for reconsideration remains pending before the

---

[2] Although the FCC did not raise these jurisdictional issues until filing its merits brief, it is axiomatic that we must satisfy ourselves of our appellate jurisdiction even had the parties not asked us to do so. *See, e.g.*, *Adapt of Phila. v. Phila. Housing Auth.*, 433 F.3d 353, 361 n.10 (3d Cir. 2006); *Metro Transp. Co. v. N. Star Reinsurance Co.*, 912 F.2d 672, 675-76 (3d Cir. 1990).

agency. *West Penn Power Co. v. EPA*, 860 F.2d 581, 583 (3d Cir. 1988).

In the case at bar, it is undisputed that at the time Petitioners filed their June 7, 2006 petition for review, their petition for reconsideration of the Second Order was still pending before the FCC and remains pending to this day, *see* Reply Br. at 5, so the petition for review is incurably premature as to the non-final Second Order. *See TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133 (D.C. Cir. 1989) (per curiam) (court lacks jurisdiction to consider prematurely filed petition even after the agency rules on a rehearing request; a new petition must be filed).

The petition for review is also incurably premature with respect to the Reconsideration Order because it does not comply with the Hobbs Act. Title 47 U.S.C. § 402(a) refers to chapter 158 of Title 28, commonly called the Hobbs Act, *see Stone v. INS*, 514 U.S. 386, 392, 115 S. Ct. 1537, 131 L. Ed. 2d 465 (1995), to determine when a petition for review of an FCC order must be filed with a federal court of appeals. The Hobbs Act's timing provision states in relevant part:

> On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.

8

28 U.S.C. § 2344. "[T]he 60 day period for seeking judicial review set forth in the Hobbs Act is jurisdictional in nature, and may not be enlarged or altered by the courts." *N.J. Dep't of Envtl. Prot. & Energy v. Long Island Power Auth.*, 30 F.3d 403, 414 (3d Cir. 1994) (quoting *Natural Res. Def. Council v. NRC*, 666 F.2d 595, 602 (D.C. Cir. 1981)); *see also* Fed. R. App. P. 26(b)(2).

In *Western Union Telegraph Co. v. FCC*, 773 F.2d 375 (D.C. Cir. 1985), the Court of Appeals for the D.C. Circuit defined "entry" of FCC orders for purposes of § 2344 as "the date upon which the [FCC] gives public notice of the order." *Id.* at 376 (relying on 47 U.S.C. § 405). An FCC regulation in turn defines "public notice" as "publication in the Federal Register" with respect to orders released in rulemaking proceedings. 47 C.F.R. § 1.4(b)(1). In *Western Union*, the FCC adopted an order on March 1, 1985, released it to the public on March 8, 1985, and published it in the Federal Register on March 21, 1985. Meanwhile, on March 15, 1985, after the order's public release but before its publication in the Federal Register, AT&T filed a petition to review the order in the Court of Appeals for the D.C. Circuit. Based on the court's definition of "entry" and the FCC's definition of "public notice," the D.C. Circuit held that AT&T's petition was premature, 773 F.2d at 378, and dismissed it for lack of jurisdiction. *Id.* at 380. In doing so, the court reasoned:

> It is not a principle of law that all agency action need be reviewable as soon as it is effective and ripe – or indeed that all agency action need be reviewable at all. Here the governing statutes, 28

9

U.S.C. § 2344 and 47 U.S.C. § 405, provide that review is unavailable until the date the [FCC] gives public notice, whether or not the order becomes effective and otherwise ripe before then.

*Id.* at 377; *see also Horsehead Res. Dev. Co. v. EPA*, 130 F.3d 1090, 1092 (D.C. Cir. 1997) ("jurisdictional statute, requiring filing 'with the court *within* thirty days from the date upon which public notice is given,' established filing window," not a filing deadline (quoting *Waterway Commc'ns Sys., Inc. v. FCC*, 851 F.2d 401, 405-06 (D.C. Cir. 1988))).

Like AT&T in *Western Union*, Petitioners here filed their petition for review seven days before the Reconsideration Order was published in the Federal Register. Their petition is therefore incurably premature.[3] As we are not bound by *Western Union*, however, Petitioners criticize it. Specifically, they argue that the Court of Appeals for the D.C. Circuit (1) did not examine the "specific sequencing language" of 28 U.S.C. §

---

[3] The cases applying 28 U.S.C. § 2344 to FCC orders have all followed *Western Union*. For example, *North American Catholic Educational Programming Foundation, Inc. v. FCC*, 437 F.3d 1206 (D.C. Cir. 2006), squarely held that "a 'petition' for review under [47 U.S.C.] § 402(a) must be filed within sixty days of the date of public notice." *Id.* at 1208 (citing § 2344); *accord Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 655 (D.C. Cir. 2004) (also citing § 2344); *see also Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 176-77 (D.C. Cir. 1997) (reading "entry" in § 2344 as Federal Register publication).

10

2344; and (2) did not recognize that 47 U.S.C. § 405, which explicitly ties judicial review to public notice, does not apply to orders that do not expressly rule on a reconsideration petition. Neither criticism is persuasive.

First, Petitioners insist that § 2344 establishes a date of "entry of [the] final order" antecedent to the date of "notice by publication." The pertinent FCC regulation states otherwise: "Commission action shall be deemed final, for purposes of seeking reconsideration at the Commission or judicial review, on the date of public notice as defined in § 1.4(b) of these rules." 47 C.F.R. § 1.103(b). And, as noted previously, for rulemaking proceedings the FCC defines "public notice" as "publication in the Federal Register." *Id.* § 1.4(b)(1). Petitioners concede that these two regulations doom their reading of § 2344, but argue that they impermissibly trump the statute. We disagree.

The Supreme Court has stated repeatedly that the "power of an administrative agency to administer a congressionally created . . . program necessarily requires . . . the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2345 (2007) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Under *Chevron*, we first determine whether a statute is silent or ambiguous on the question we face; if so, we next determine whether the agency's regulation is based on a reasonable interpretation of the statute. *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006).

11

Here, Congress has not directly spoken to what "entry" means in the Hobbs Act. Petitioners argue that § 2344 contains "specific sequencing language" placing "entry" before notice by publication, so whatever "entry" means, it cannot mean publication in the Federal Register. We are unpersuaded. The first sentence of § 2344 says merely that when "entry" occurs, notice by service or publication must also occur. It remains ambiguous whether "entry" might not occur until publication in the Federal Register. Our reading of the text is buttressed by the fact that prior to the promulgation of 47 C.F.R. § 1.103(b), there had been considerable confusion in the application of § 2344 to FCC decisions. *See ITT World Commc'ns, Inc. v. FCC*, 621 F.2d 1201, 1206 (2d Cir. 1980) (Newman, J.); *id.* at 1210 (Mansfield, J.) (urging the FCC to "promulgate straightforward regulations explaining how and when their reviewable orders are to issue" (internal citation omitted)). Indeed, in direct response to this judicial invitation, the FCC promulgated § 1.103(b). *See In the Matter of Addition of new Section 1.103*, Memorandum Opinion and Order, 85 F.C.C.2d 618, 623 ("statutory terms 'entry' of a final order and 'the date upon which public notice is given' have the same meaning"), *published at* 46 Fed. Reg. 18,551, 18,554 (March 25, 1981).

Because Congress has not defined "entry" in the Hobbs Act and its meaning is ambiguous, we proceed to step two of the *Chevron* analysis and consider whether the regulations are based on a reasonable interpretation of the statute. First, it appears that the FCC's definition of "entry" as Federal Register publication is inherently reasonable. *Compare with Horsehead*, 130 F.3d at 1093 (even absent any pertinent agency regulation, default rule is that "promulgation" means Federal Register

12

publication); *see also Kentucky v. Brock*, 845 F.2d 117, 120 (6th Cir. 1988) ("Administrative agencies have considerable latitude in determining the event that triggers commencement of the judicial review period." (quoting *Associated Gas Distribs. v. FERC*, 738 F.2d 1388, 1391 (D.C. Cir. 1984) (per curiam))). Second, courts "give 'considerable weight' to a 'consistent and longstanding interpretation by the agency'" responsible for administering a statute. *Int'l Union of Elec., Radio & Mach. Workers v. Westinghouse Elec. Corp.*, 631 F.2d 1094, 1106 (3d Cir. 1980) (quoting *United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 719, 95 S. Ct. 2427, 45 L. Ed. 2d 486 (1975)). Here, §§ 1.103(b) and 1.4(b)(1) have tied "entry" to Federal Register publication with respect to FCC rulemaking orders since § 1.103(b) was first promulgated in 1981. *See, e.g.*, *Small Bus. in Telecomms. v. FCC*, 251 F.3d 1015, 1024 (D.C. Cir. 2001); *Goodman v. FCC*, 182 F.3d 987, 992-93 (D.C. Cir. 1999).

In addition, we observe that some members of Congress have indicated their approval of these regulations. When Congress amended 47 U.S.C. § 405 in 1982, the House Conference noted:

> The Senate amended [§] 405 of the Communications Act by providing that specified pleading periods for seeking agency reconsideration or judicial review of Commission decisions commence from the date on which the Commission gives "public notice" of its decisions. . . .

13

Recently, the Commission adopted rules which refine the meaning of "public notice." Addition of new [§] 1.103 to the Commission's rules, Amendments to [§] 1.4(b), Report and Order, 85 F.C.C.2d 618 (1981).

By adopting these rules, the Commission determined that public notice, as that term is used in [§] 405, only can take the form of a written document. See [§] 1.4(b) of the Commission's rules as amended, 47 C.F.R. [§] 1.4(b) (1981). The kind of written document constituting public notice will be governed generally by the kind of proceeding that is involved. For example, in notice and comment rulemaking proceedings, public notice of a final Commission decision will occur on the date such decision is published in the Federal Register. See [§] 1.4(b)(1) (1981). . . . The Conferees believe that in rulemaking proceedings it is important that the public have the opportunity to obtain a copy of the full text of the Commission decisions before pleading periods for appeal begin. See 47 C.F.R. [§] 1.4(b)(1) (1981).

H.R. Rep. No. 97-765, at 57 (1982) (Conf. Rep.), *as reprinted in* 1982 U.S.C.C.A.N. 2261, 2301. If the Conference believed that either § 1.103(b) or § 1.4(b)(1) contravened a statute, it would not have cited both approvingly as the basis for the

14

legislation.[4]   Therefore, the FCC's regulations interpreting "entry" in the Hobbs Act as publication in the Federal Register are eminently reasonable, and we must defer to that interpretation.

Petitioners also criticize *Western Union* for relying on 47 U.S.C. § 405, which deals primarily with FCC orders ruling on petitions for reconsideration.  The FCC order at issue in *Western Union* unquestionably did not rule on a petition for reconsideration, and yet, in dismissing the petition for judicial review of that order, the Court of Appeals for the D.C. Circuit relied on the final sentence of § 405(a), which states:

---

[4] Petitioners' reliance on a Seventh Circuit case, *North American Telecommunications Association v. FCC* (*NATA*), 751 F.2d 207 (7th Cir. 1984) (per curiam), for the proposition that the Hobbs Act's timing requirements merely prevent "races to the courthouse" as opposed to imposing a mandatory jurisdictional bar is unpersuasive.  Not only did *Western Union* criticize *NATA*, *see* 773 F.2d at 379, but the Seventh Circuit itself declined to follow *NATA* in an analogous context shortly thereafter.  *See United States v. Hansen*, 795 F.2d 35, 38 (7th Cir. 1986).   In any event, even *NATA* on its own terms acknowledges that "a[n FCC] order is deemed 'entered' for purposes of judicial review when the [FCC] gives 'public notice' of the order, 47 U.S.C. § 405, and a rule of the [FCC], *which we cannot say is unreasonable*, defines public notice . . . 47 C.F.R. § 1.4(b)(1)."  751 F.2d at 208 (emphasis added).

15

> The time within which a petition for review must be filed in a proceeding to which section 402(a) of this title applies, or within which an appeal must be taken under section 402(b) of this title in any case, shall be computed from the date upon which the Commission gives public notice of the order, decision, report, or action complained of.

47 U.S.C. § 405(a). The foregoing sentence plainly applies to all petitions for review to which § 402(a) applies, whether or not the FCC order to be reviewed granted or denied a petition for reconsideration. Indeed, even if the surrounding statutory text (unquoted) rendered the provision's general applicability ambiguous, the legislative history of § 405 previously quoted indicates that in relying on regulations that apply to judicial review of all FCC rulemaking orders, Congress intended that the last sentence of § 405(a) apply just as broadly. Armed with the plain language, legislative history, and the absence of case law to the contrary, we find that the final sentence of 47 U.S.C. § 405(a) applies to all § 402(a) petitions for review.

Finally, the Supreme Court's statement that the "requirement of administrative finality" is to be "interpreted pragmatically," *Bell v. New Jersey*, 461 U.S. 773, 779, 103 S. Ct. 2187, 76 L. Ed. 2d 312 (1983), does not alter our conclusion. Had Petitioners filed their petition for review after the Hobbs Act's sixty-day filing period had expired, we would have lacked jurisdiction, despite the fact that the Reconsideration Order unquestionably would have been final. Filing a petition before the sixty-day filing period begins likewise deprives us of jurisdiction. *See Horsehead*, 130 F.3d at 1092; *cf. id.* at 1095

16

("Although the result we reach may seem harsh, we note that 'nothing prevented [Petitioners] from supplementing [their] premature petition with a later protective petition.'" (quoting *Western Union*, 773 F.2d at 380)) Accordingly, a pragmatic interpretation of *finality* does not save Petitioners here; finality is a necessary condition of judicial review, but it is not sufficient under the applicable statute, which limits our appellate jurisdiction *ab initio* to petitions filed within the sixty-day period prescribed by statute.

In sum, because we find persuasive the line of cases from the Court of Appeals for the D.C. Circuit beginning with *Western Union*, we hold that a petition to review a rulemaking order of the FCC is incurably premature when it is filed before the rulemaking order is published in the Federal Register. Title 47 U.S.C. § 402(a) governs this petition for review by reference to the Hobbs Act, and the date of "entry" of the FCC's Reconsideration Order is the same as the date the FCC gave "public notice" thereof. Both 47 C.F.R. § 1.103(b) and 47 U.S.C. § 405(a) mandate such a construction. Title 47 C.F.R. § 1.4(b)(1), which then defines "public notice" as "publication in the Federal Register" for rulemaking orders, is a reasonable interpretation of the Hobbs Act. Accordingly, the instant petition to review the Reconsideration Order is incurably premature because it was filed seven days prior to the order's publication in the Federal Register, and we have no jurisdiction to consider the petition.

*B. No Excuse for Prematurity*

17

Petitioners next argue that a per curiam Order in which a motions panel of this Court reached the merits of their emergency motion for stay is "law of the case." Under this doctrine, "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." *In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998).

We find the law of the case doctrine inapplicable here. First, the Order was issued by a motions panel. As the Court of Appeals for the Ninth Circuit has explained:

> Reconsideration by a merits panel of a motions panel's decision, during the course of a single appeal, differs in a significant way from an appellate court's reconsideration of a decision on the merits issued by that court on a prior appeal. A party seeking to overturn a merits panel's decision obtained by its opponent has previously had the opportunity to file petitions for en banc review and certiorari challenging the earlier decision: the issue is presented to the appellate court for a second time only after the court's first decision has survived all of the customary obstacles to finality. Motions panel decisions are rarely subjected to a similar process prior to the time that the case is presented to the[] merits panel. Full review of a motions panel decision will more likely occur only after the merits panel has acted. For this reason, while a merits panel does not lightly overturn a decision made by a

18

motions panel during the course of the same appeal, we do not apply the law of the case doctrine as strictly in that instance as we do when a second merits panel is asked to reconsider a decision reached by the first merits panel on an earlier appeal.

*United States v. Houser*, 804 F.2d 565, 568 (9th Cir. 1986), *cited in Lambert v. Blackwell*, 134 F.3d 506, 512 n.17 (3d Cir. 1997) (conclusion of motions panel, "based on a record less complete than that before us and not reached after the opportunity for the intensive study available to a merits panel, is not binding on this panel"). Other appellate courts also have held squarely that the "decision of a motions panel is not binding for purposes of law of the case." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1176 n.3 (10th Cir. 2005) (internal citation omitted); *accord Sammie Bonner Constr. Co. v. W. Star Trucks Sales, Inc.*, 330 F.3d 1308, 1311 (11th Cir. 2003).

Second, Petitioners ask us to treat the Order as binding on a question of subject matter jurisdiction. As the Court of Appeals for the Fourth Circuit has explained:

The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the

19

very legitimacy of a court's adjudicatory authority.

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *see also Green v. Dep't of Commerce*, 618 F.2d 836, 839 n.9 (D.C. Cir. 1980) (law of the case cannot confer subject matter jurisdiction); *Pub. Interest Research Group v. Magnesium Elektron, Inc.*, 123 F.3d 111, 118 (3d Cir. 1997) (refusing to apply law of the case when Article III standing was at stake and extraordinary circumstances were present).

In light of the foregoing, we hold that the law of the case doctrine does not bar a merits panel from revisiting a motions panel's assumption of subject matter jurisdiction. *See Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999) (per curiam), *cited in Villot v. Varner*, 373 F.3d 327, 337 n.13 (3d Cir. 2004); *accord CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 397 n.1 (4th Cir. 1995) (per curiam) (citing decisions from the Fifth, Seventh, and Ninth Circuits to hold that "the doctrine of 'law of the case' does not prevent this Court from revisiting a prior ruling of a motion panel on the Court's jurisdiction").[5]

Furthermore, whereas the All Writs Act served as a proper basis for deciding the emergency motion, *see Reynolds*

---

[5] In any event, only legal issues decided expressly or by necessary implication are law of the case. *See Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 31 (3d Cir. 1994). Here, the motions panel assumed jurisdiction over the emergency motion for stay, but never did so with respect to the petition for review.

*Metals Co. v. FERC*, 777 F.2d 760, 762 (D.C. Cir. 1985) (citing the All Writs Act's "well established requirements that we routinely apply to *motions for stay pending appeal*, among which is the likelihood of irreparable harm" (emphasis added)), it may not be used to consider the underlying petition. It is settled law that "[t]he All Writs Act is not an independent grant of appellate jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 535, 119 S. Ct. 1538, 143 L. Ed. 2d 720 (1999) (internal ellipses omitted) (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3932 (2d ed. 1996)); *see also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33, 123 S. Ct. 366, 154 L. Ed. 2d 368 (2002). Moreover, the Supreme Court has held that "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Carlisle v. United States*, 517 U.S. 416, 429, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996) (quoting *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43, 106 S. Ct. 355, 88 L. Ed. 2d 189 (1985)). Here, the statute that establishes the filing window for a petition for review is the Hobbs Act, which controls. The parties have not cited, nor have we found, a reported decision in which the All Writs Act was employed to save an untimely appeal or petition for review from being dismissed for lack of jurisdiction.

What the All Writs Act permits – and what the motions panel did in this case – is to issue writs "in aid of . . . jurisdiction[]." 28 U.S.C. § 1651(a). Construing this language, courts have considered appeals that are within their jurisdiction while an appeal has not yet been perfected. *Am. Pub. Gas Ass'n v. FPC*, 543 F.2d 356, 357 (D.C. Cir. 1976) (per curiam) (citing *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04, 86 S. Ct. 1738,

21

16 L. Ed. 2d 802 (1966)). At the time the motions panel issued its Order, Petitioners still had forty-six days to perfect their appeal, so the panel's use of the All Writs Act to consider the emergency motion was proper at that time. By contrast, since August 15, 2006, Petitioners could no longer perfect an appeal of the Reconsideration Order.[6] Accordingly, our use of the All Writs Act at this stage would contravene settled law. Therefore, the motions panel's Order does not excuse the incurable prematurity of the instant petition for review.

## III.

In conclusion, Petitioners' petition for review is incurably premature because the Second Order is non-final, and the Reconsideration Order had not been published in the Federal Register at the time the petition was filed. Moreover, neither the law of the case doctrine nor the All Writs Act permits us to excuse the prematurity. Accordingly, we lack jurisdiction to reach the merits of Petitioners' challenges to the FCC's new

---

[6] It is also true that under the All Writs Act, we would "have the authority to compel agency action unreasonably withheld or delayed if the putative agency action, once forthcoming, would be reviewable in this Court." *Int'l Union, United Mine Workers of Amer. v. U.S. Dep't of Labor*, 358 F.3d 40, 42 (D.C. Cir. 2004). The Reconsideration Order, however, is not forthcoming; it has already come. The improper appeal of an already existing agency order cannot be cured by resorting to the All Writs Act.

22

spectrum licensing rules and Auction 66, and we will dismiss the petition for review.