**PUBLISH**

**January 3, 2014**

UNITED STATES COURT OF APPEALS

TENET CIRCUIT

| | |
|---|---|
| COUNCIL TREE INVESTORS, INC. and BETHEL NATIVE CORPORATION, Petitioners, v. FEDERAL COMMUNICATIONS COMMISSION and THE UNITED STATES OF AMERICA, Respondents. | No. 12-9543 |
| CELLCO PARTNERSHIP, d/b/a Verizon Wireless, Intervenor. | |
| ASIAN AMERICAN JUSTICE CENTER, a member of the Asian American Center for Advancing Justice; STEVEN R. BRADLEY; MEDIA ALLIANCE; NATIONAL ASSOCIATION OF MULTICULTURAL DIGITAL ENTREPRENEURS; NATIONAL HISPANIC MEDIA COALITION; PUBLIC KNOWLEDGE; RAINBOW PUSH COALITION; GILBERT H. SCOTT, SR.; WOMEN'S INSTITUTE FOR FREEDOM OF THE PRESS; ARIZONA HISPANIC NEWSWIRE LLC; BUSINESS INTELLIGENCE | |

SOLUTIONS, LLC; BRIAN
O'REILLY; DEMPSTER GROUP,
LLC; KINEX NETWORKING
SOLUTIONS, INC.; NATIONAL
ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE; NATIONAL INDIAN
TELECOMMUNICATIONS
INSTITUTE; NATIONAL
ORGANIZATION FOR WOMEN
FOUNDATION; OFFICE OF
COMMUNICATION OF THE
UNITED CHURCH OF CHRIST,
INC.; CTIA - THE WIRELESS
ASSOCIATION; THE
TELECOMMUNICATIONS
INDUSTRY ASSOCIATION;
MOBILE FUTURE,

      Amici Curiae.

---

**Appeal from the Federal Communications Commission**
**(FCC 07-197, FCC 12-12)**

---

Dennis P. Corbett (S. Jenell Trigg with him on the briefs), Lerman Senter PLLC, Washington, D.C., for Petitioners.

Richard Welch (Sean A. Lev, Peter Karanjia, Jacob M. Lewis, and Laurence N. Bourne, Federal Communications Commission, Office of General Counsel; and Joseph F. Wayland, Robert B. Nicholson, and Robert J. Wiggers, United States Department of Justice, Antitrust Division, Appellate Section, with him on the brief), Federal Communications Commission, Office of General Counsel, for Respondents.

Thomas R. McCarthy (Andrew G. McBride, Brett A. Shumate, Wiley Rein LLP, Washington, D.C.; Michael E. Glover, Verizon Communications, Inc., Arlington, VA; and John T. Scott, III, and Catherine M. Hilke, Verizon Communications, Inc., Washington, D.C., with him on the brief), Wiley Rein LLP, Washington,

D.C., for Intervenor.

Jeneba Jalloh Ghatt, The Ghatt Law Group LLC, College Park, Maryland, filed an amicus curiae brief for Arizona Hispanic Newswire LLC, Business Intelligence Solutions, LLC, Brian O'Reilly, Dempster Group, LLC, Gilbert H. Scott, Sr., Kinex Networking Solutions, Inc., Steven R. Bradley, Asian American Justice Center, Media Alliance, National Association for the Advancement of Colored People, National Association of Multicultural Digital Entrepreneurs, National Hispanic Media Coalition, National Indian Telecommunications Institute, National Organization for Women Foundation, Office of Communication of the United Church of Christ, Inc., Public Knowledge, Rainbow PUSH Coalition, and Women's Institute for Freedom of the Press, in support of Petitioners.

Michael Altschul, Senior Vice President and General Counsel, CTIA - The Wireless Association, Washington, D.C., David H. Solomon, Bryan N. Tramont, and Russell P. Hanser, Wilkinson Barker Knauer, LLP, Washington, D.C., and Danielle Coffey, Vice President Government Affairs, Telecommunications Industry Association, Washington, D.C., filed an amicus brief for CTIA - The Wireless Association, The Telecommunications Industry Association, and Mobile Future, in support of Respondents.

---

Before **KELLY**, **McKAY**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Petitioners Council Tree Investors, Inc., a communications investment firm, and Bethel Native Corporation, a small wireless carrier based in Alaska (collectively, "Council Tree"), seek our review of two orders issued by the Federal Communications Commission ("FCC" or "the Commission")—the D Block Waiver Order (the "Waiver Order") issued in 2007 and the Waiver Reconsideration Order issued in 2012. In so doing, Council Tree specifically requests nullification of Auction 73, the FCC's auction of the 700-MHz wireless

3

spectrum conducted in early 2008 pursuant to the Waiver Order. Council Tree filed a Petition for Reconsideration of the Waiver Order (the "Waiver Reconsideration Petition") with the FCC in 2007, as well as a Supplement to the Waiver Reconsideration Petition (the "Supplement") in 2011. In its Waiver Reconsideration Order, the FCC dismissed the Waiver Reconsideration Petition as moot and dismissed the Supplement as untimely. For the reasons set forth below, we **dismiss** Council Tree's petition, as it pertains to the Waiver Order, and **deny** its petition, as it relates to the Waiver Reconsideration Order.

## I

The Communications Act of 1934 authorizes the FCC to award licenses to use the electromagnetic spectrum in order to provide communications services. *See* 47 U.S.C. §§ 307, 309. In 1993, Congress enacted section 309(j), which directs the Commission to award spectrum licenses "through a system of competitive bidding," e.g., by auction. *Id.* § 309(j)(1). Pursuant to section 309(j), the Commission must design systems of competitive bidding that, among other objectives, "promot[e] economic opportunity and competition . . . by avoiding excessive concentration of licenses and by disseminating licenses among a wide variety of applicants, including small businesses, rural telephone companies, and businesses owned by members of minority groups and women."

4

*Id.* § 309(j)(3)(B).  These statutorily-prescribed groups are commonly referred to as "designated entities," or "DEs."[1]

To promote the participation of DEs in spectrum-license auctions, the Commission awards "bidding credits" that reduce by a specified percentage the amounts that DEs would otherwise pay for licenses won at auction.  47 C.F.R. § 1.2110(f).  To prevent abuse of the bidding-credits system, the Commission is required to seek the "avoidance of unjust enrichment through the methods employed to award" spectrum licenses, 47 U.S.C. § 309(j)(3)(C), and to establish "such . . . antitrafficking restrictions and payment schedules as may be necessary to prevent unjust enrichment as a result of the methods employed to issue licenses and permits," *id.* § 309(j)(4)(E).

Accordingly, the Commission took steps to ensure that "only legitimate small businesses reap the benefits of the Commission's designated entity program."  Implementation of the Commercial Spectrum Enhancement Act & Modernization of the Comm'n's Competitive Bidding Rules & Procedures,

---

[1]     Although FCC rules define "designated entities" to include "businesses owned by members of minority groups and/or women," 47 C.F.R. § 1.2110(a), the FCC has eliminated DE benefits based on the race or gender of an applicant's owners after the Supreme Court ruled in *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995), that certain federal affirmative-action programs were unconstitutional.  *See Omnipoint Corp. v. FCC*, 78 F.3d 620, 633 (D.C. Cir. 1996) (upholding an FCC rule change that eliminated race- and gender-based provisions in its competitive-bidding rules).  Since *Adarand*, bidding credits have been available only to eligible small businesses, based on specific size standards.  *See, e.g.*, *Sioux Valley Rural Television, Inc. v. FCC*, 349 F.3d 667, 669–73 (D.C. Cir. 2003).

Further Notice of Proposed Rule Making, 21 FCC Rcd. 1753, 1757 ¶ 6 (2006). Under the Commission's unjust-enrichment rules, a DE that has used bidding credits to acquire a license must return some or all of those credits if, during the first five years of the license term, it loses its eligibility for bidding credits or subsequently transfers its license to an entity that is not eligible for DE status. *See id.* at 1763 ¶ 20; *see also* 47 C.F.R. § 1.2111(d).

In April 2006, the Commission issued the Implementation of the Commercial Spectrum Enhancement Act and Modernization of the Commission's Competitive Bidding Rules and Procedures, Second Report and Order, 21 FCC Rcd. 4753 (2006) ("DE Second Report & Order"). That document made two primary revisions to the auction rules for DEs (collectively, the "2006 Rules"). First, it increased the repayment period for the unjust-enrichment rules from five years to ten years, such that if a DE transferred its license to a non-DE or otherwise lost eligibility for DE benefits during the first ten years of its license, it would have to repay some or all of its bidding credits (the "Ten-Year Rule"). 47 C.F.R. § 1.2111(d)(2)(i) (2006) (vacated 2010). And, second, it disqualified license applicants or licensees from eligibility for DE benefits if they leased or resold (including at wholesale) more than 50% of their aggregate spectrum capacity (the "Fifty-Percent Rule"). *Id.* § 1.2110(b)(3)(iv)(A) (2006) (vacated 2010).

6

In May 2006, three petitioners—Council Tree Communications, Inc.,

Bethel Native Corporation, and the Minority Media and Telecommunications

Council—jointly filed a petition for expedited reconsideration of the DE Second

Report & Order. *See* Implementation of the Commercial Spectrum Enhancement

Act & Modernization of the Comm'n's Competitive Bidding Rules & Procedures,

Order on Recons. of Second Report & Order, 21 FCC Rcd. 6703, 6703–04,

6721 n.2 (2006) ("Order on Reconsideration"). Before the FCC published its

order addressing that petition, in June 2006, the three petitioners filed for review

in the Third Circuit of the DE Second Report & Order. The Third Circuit

dismissed the petition as premature.[2] *See Council Tree Commc'ns, Inc. v. FCC*

(*Council Tree I*), 503 F.3d 284, 287 (3d Cir. 2007) ("We have no jurisdiction to

consider an incurably premature petition for review. A petition to review a non-

final agency order is incurably premature." (citation omitted)).

Several months before the Third Circuit issued this decision, the

Commission had stated on April 27, 2007 that it would apply the 2006 Rules

promulgated in the DE Second Report & Order to Auction 73, in which the FCC

would auction several 700-MHz blocks of the spectrum. *See* Serv. Rules for the

698–746, 747–762 & 777–792 MHz Bands, Report & Order, 22 FCC Rcd. 8064,

8067 ¶ 6 (2007) ("700 MHz First Report & Order") ("With regard to auctions-

---

[2] Although the Minority Media and Telecommunications Council participated in the Third Circuit litigation regarding the DE Second Report & Order, it is not a petitioner before us in this case.

related issues, we find that our existing competitive bidding rules do not require modification for purposes of an auction of commercial 700 MHz Band licenses."). Council Tree did not seek judicial review of this order.

However, in August 2007, the Commission issued another order in the same proceeding. *See* Serv. Rules for the 698–746, 747–762 & 777–792 MHz Bands, Second Report & Order, 22 FCC Rcd. 15289 (2007) ("700 MHz Second Report & Order"). There, the focus was not on DEs and the application of the 2006 Rules to Auction 73; rather, the Commission (among other things) addressed a topic, as to which it had previously sought comment, relating to "establishing a public/private partnership between a commercial licensee and a single public safety licensee with respect to developing a nationwide, shared interoperable broadband network for use by public safety users." *Id.* at 15292 ¶ 2; *see Council Tree Commc'ns, Inc. v. FCC* (*Council Tree II*), 324 F. App'x 3, 5 (D.C. Cir. 2009) (per curiam).

Nonetheless, using this order as the predicate, proceeding alone, Council Tree (without Bethel Native Corporation) sought review in the D.C. Circuit of its "claims that the decision of the Federal Communications Commission ('FCC') to use its existing bidding rules [i.e., the 2006 Rules, which related to DEs] for a particular auction was arbitrary and capricious or otherwise not in accordance with law." *Council Tree II*, 324 F. App'x at 4. The D.C. Circuit rejected—based on a lack of jurisdiction—Council Tree's effort to obtain review of such claims,

8

concluding that the FCC's 700 MHz Second Report & Order did not conclusively reopen the subject matter of its 700 MHz First Report & Order, from which Council Tree's claims (in substance) actually stemmed. *See id.* at 5.

In November 2007, the Commission issued the Waiver Order on its own motion, waiving the application of the Fifty-Percent Rule—also referred to as the "impermissible material relationship rule"—"for purposes of determining designated entity eligibility solely with respect to arrangements for lease or resale (including wholesale) of the spectrum capacity of the Upper 700 MHz Band D Block ('D Block') license." J.A. at 6 (FCC Order, released Nov. 15, 2007). In other words, the Waiver Order excepted D Block licenses from the Fifty-Percent Rule. The Commission found that "the unique regulations governing the D Block license . . . together with the application of the Commission's other designated entity eligibility requirements—eliminate[d] for the D Block license the risks that led the Commission to adopt the impermissible material relationship rule." *Id.* (footnote omitted). The Waiver Order "stress[ed] that this waiver applie[d] *only* to arrangements for spectrum capacity on the D Block," and that it was "not waiving operation of the [Fifty-Percent Rule] as applied to arrangements that a D Block applicant or licensee may have for use of licenses other than the D Block license." *Id.* at 9.

Council Tree filed a Waiver Reconsideration Petition with the Commission on December 7, 2007. In the petition, Council Tree requested rescission of the

9

Waiver Order.  *Id.* at 46 (Pet. for Recons., filed Dec. 7, 2007) (concluding that "the [Waiver Order] should be reconsidered and rescinded").  At a few points in its petition, Council Tree argued that the rationale underlying the waiver of the Fifty-Percent Rule for the D Block actually could justify granting a waiver across the entire spectrum—that is, relieving all of the spectrum from application of the Fifty-Percent Rule.  *See, e.g.*, *id.* at 43 ("[T]here is no rational basis for limiting the scope of the relief granted by the [Waiver Order] exclusively to the D Block. The relief must logically extend to *all* DE bidding on all spectrum available in the auction.").  By advancing this seemingly discordant argument, however, Council Tree was actually trying to achieve the same objective articulated throughout the rest of its petition—rescission of the Waiver Order.  Specifically, Council Tree reasoned that the justification for waiving application of the Fifty-Percent Rule to the D Block could just as well be applied to all of the spectrum; therefore, the fact that the Commission only extended the waiver to the D Block (and not the other blocks of the spectrum) demonstrated that the Commission was acting arbitrarily and capriciously and that the Waiver Order—a product of such deficient decision-making—should be rescinded.  *See id.* ("The [Waiver Order] is . . . arbitrary and capricious and it must be overturned."); *cf. id.* at 32 ("The [Waiver Order] was adopted in violation of statute and precedent, and is arbitrary and capricious.  It cannot survive.").

10

In early 2008, while the Waiver Reconsideration Petition was pending, the Commission proceeded to conduct Auction 73 pursuant to the 2006 Rules and the Waiver Order. Around the time this auction concluded, in March 2008, *see* Auction of the D Block License in the 758–763 & 788–793 MHz Bands, 23 FCC Rcd. 5421, 5422 (2008), the FCC issued an order formally denying the May 2006 petition filed by the three petitioners (including Council Tree). *See* Implementation of the Commercial Spectrum Enhancement Act & Modernization of the Comm'n's Competitive Bidding Rules & Procedures, Second Order on Recons. of Second Report & Order, 23 FCC Rcd. 5425, 5426 ¶ 4 (2008) ("Second Order on Reconsideration").[3] The three petitioners then filed a timely petition for review before the Third Circuit. *Council Tree Commc'ns, Inc. v. FCC* (*Council Tree III*), 619 F.3d 235, 248 (3d Cir. 2010). Among other things, the Third Circuit held that the Fifty-Percent Rule and the Ten-Year Rule were invalid for failure to comply with notice-and-comment requirements. *See id.* at 258.

Nevertheless, on May 18, 2011, Council Tree filed a supplement to the still-pending Waiver Reconsideration Petition, J.A. at 100–09 (Supp. to Pet. for Recons., filed May 18, 2011), along with a Motion for Leave to File the

---

[3] Although the FCC had issued an earlier (first) Order on Reconsideration to clarify certain aspects of the new DE rules, it did not formally deny the petition for expedited reconsideration until its second reconsideration order. *Cf. Council Tree I*, 503 F.3d at 286 ("The Reconsideration Order did not expressly grant or deny the petition, but essentially rejected all of the arguments contained therein.").

Supplement, *id.* at 180–83 (Mot. for Leave to File Supp., filed May 18, 2011). The Commission released its Waiver Reconsideration Order on February 1, 2012, which was published in the Federal Register on March 21, 2012. *Id.* at 12–15 (FCC Order, released Feb. 1, 2012); *see* Implementation of the Commercial Spectrum Enhancement Act & Modernization of the Comm'n's Competitive Bidding Rules & Procedures, 77 Fed. Reg. 16470-01 (Mar. 21, 2012) (to be codified at 47 C.F.R. pt. 1). The Waiver Reconsideration Order formally rescinded the 2006 Rules in light of the Third Circuit's decision in *Council Tree III*, dismissed the Waiver Reconsideration Petition as moot, denied the Motion for Leave to File the Supplement, and dismissed the accompanying Supplement as untimely. J.A. at 12–13.

Council Tree filed a petition for review of the Waiver Order and the Waiver Reconsideration Order in our court on March 29, 2012.

## II

We begin by considering whether Council Tree's petition for review of the Waiver Order—that is, the order that waived the application of the Fifty-Percent Rule to D Block spectrum licenses—gives us jurisdiction over Council Tree's argument regarding the application of the 2006 Rules to Auction 73. We conclude that it does not. We then assess the propriety of the FCC's dismissals of Council Tree's Waiver Reconsideration Petition and its Supplement, and determine that the FCC's dismissals should be upheld.

## A

Council Tree seeks invalidation of Auction 73 based on the fact that "the FCC conducted Auction 73 pursuant to . . . the [2006] Rules." Pet'rs' Opening Br. at 44. Before we may reach the merits of Council Tree's claim that Auction 73 was itself an unlawful agency action, we must first determine whether we have jurisdiction over this challenge.

Courts of appeals have exclusive jurisdiction over final orders issued by the FCC. 28 U.S.C. § 2342(1); *see, e.g.*, *Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1211 (9th Cir. 2013) (en banc) ("Jurisdiction over challenges to FCC orders lies exclusively in the court of appeals; as such, federal district courts lack jurisdiction over appeals of FCC orders."). Our "[j]urisdiction is invoked by filing a petition as provided by section 2344." 28 U.S.C. § 2342. That section, in turn, requires that petitions for review be filed within sixty days of entry of a final order. *Id.* § 2344. Thus, our jurisdiction over an FCC order is contingent upon the timely filing of a petition for review. *Cf. Cellular Telecomms. & Internet Ass'n v. FCC*, 330 F.3d 502, 508 (D.C. Cir. 2003) ("The 60-day statutory deadline is jurisdictional."); *NRDC v. Nuclear Regulatory Comm'n*, 666 F.2d 595, 602 (D.C. Cir. 1981) ("The 60 day period for seeking judicial review set forth in the Hobbs Act[, 28 U.S.C. § 2344,] is jurisdictional in nature, and may not be enlarged or altered by the courts.").

13

The FCC announced on April 27, 2007, by way of the 700 MHz First Report & Order, that it would apply the then-existing DE auction rules—including the 2006 Rules—to Auction 73.  *See* 22 FCC Rcd. at 8067. Council Tree acknowledges that the FCC's decision to apply the 2006 Rules to Auction 73 was announced on April 27, 2007 in the 700 MHz First Report & Order.  Pet'rs' Opening Br. at 28 ("On April 27, 2007 . . . the FCC made clear that it was applying to Auction 73, *without exception*, [the Fifty-Percent Rule and Ten-Year Rule] it had adopted in 2006 . . . .").  But Council Tree did not file a petition for review of the 700 MHz First Report & Order within sixty days of that date.  Instead, in December 2007, Council Tree petitioned for reconsideration of the November 2007 Waiver Order, which excepted D Block licenses from the Fifty-Percent Rule.  Council Tree's failure to challenge the 700 MHz First Report & Order on the grounds that it inappropriately applied the 2006 Rules to Auction 73 constitutes a high jurisdictional hurdle—and ultimately an insurmountable one—to our consideration of essentially the same challenge which Council Tree presents in the context of its petition for review of the Waiver Order.[4]

---

[4]    Of course, Council Tree had seemingly tried a similar approach in 2007: in the context of a purported challenge to the 700 MHz Second Report & Order, Council Tree attempted to eviscerate the FCC's "decision . . . to use its existing bidding rules for a particular auction" on the grounds that it was "arbitrary and capricious or otherwise not in accordance with law."  *Council Tree II*, 324 F. App'x at 4.  As we do here, the D.C. Circuit concluded that it did not have jurisdiction over such an attempt.  *Id.*

14

Council Tree attempts to circumvent this jurisdictional deficiency by casting the Waiver Order as having effectively reopened the Commission's April 2007 700 MHz First Report & Order. In other words, Council Tree urges that we have jurisdiction to review the FCC's execution of Auction 73 pursuant to the 2006 Rules because the FCC "voluntarily elect[ed] in the [Waiver Order] to revisit the issue of how it would apply [those rules] to Auction 73." *Id.* at 29.

The Supreme Court, in the context of considering the reviewability of the Interstate Commerce Commission's decision not to reopen a proceeding under its reconsideration authority pursuant to 49 U.S.C. § 10327(g), held that "[w]hen [an agency] reopens a proceeding for any reason and, *after reconsideration*, issues a new and final order setting forth the rights and obligations of the parties, that order—even if it merely reaffirms the rights and obligations set forth in the original order—is reviewable on its merits." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987) (emphasis added). On the other hand, when an agency decision is formally characterized as one denying reconsideration, reviewing courts should not look beyond that formal characterization to determine whether reconsideration in fact occurred. *See id.* at 280 (concluding that "an order which merely denies rehearing of . . . [the prior] order is not itself reviewable" (alteration in original) (quoting *Microwave Commc'ns, Inc. v. FCC*, 515 F.2d 385, 387 n.7 (D.C. Cir. 1974)) (internal quotation marks omitted)).

However, not all agency decisions have a formal characterization; the

15

Waiver Order does not regarding the topic of the general applicability of the 2006 Rules to Auction 73. Where agency decisions "lack[] such a formal designation—reconsideration or denial of reconsideration—we must look to the substance of [the agency's] action to determine whether it represents a new decision or merely a reaffirmance of previous action." *HRI, Inc. v. EPA* (*HRI I*), 198 F.3d 1224, 1238 (10th Cir. 2000). If an agency "simply reassert[s] its original position," the agency has not reopened its decision—*viz.*, the agency's decision must "reflect a sufficient degree of separateness, novelty, and finality, to trigger the limitations period for judicial review." *Id.*

Council Tree asserts that the Waiver Order "fits easily within the contours of *HRI I*'s 'separateness, novelty, and finality' test." Pet'rs' Opening Br. at 31. The Waiver Order is separate, Council Tree argues, because it was issued outside of the context of an existing FCC proceeding; it is novel because it extended limited relief from the Fifty-Percent Rule to the D Block licenses on the basis of an "entirely new" rationale regarding the uniqueness of the D Block;[5] and it is a

---

[5] At oral argument, Council Tree pointed to paragraph nine of the Waiver Order as demonstrating the FCC's allegedly new rationale regarding the D Block. In that paragraph, the FCC explained that "the D Block license is conditioned upon its commercial licensee constructing and operating a nationwide, interoperable broadband network across both the D Block and the 700 MHz public safety broadband spectrum"; it "must be used to provide both a commercial service and a broadband network service to public safety entities." J.A. at 10 (internal quotation marks omitted). Because a D Block licensee would necessarily "be required to participate in the provision of facilities-based services for the benefit of the public," the FCC concluded that a waiver of the Fifty-

(continued...)

final agency action because Auction 73 was conducted pursuant to the Waiver Order's "renewed adherence" to the 2006 Rules. *Id.* at 31–32.

However, none of Council Tree's arguments demonstrate that the FCC, by means of its Waiver Order, made a "new and final" decision, as defined by the Supreme Court, relating to the general applicability of the 2006 Rules to all blocks of spectrum covered by Auction 73. *See Bhd. of Locomotive Eng'rs*, 482 U.S. at 278. More specifically, Council Tree has not demonstrated that the Waiver Order decided anything new beyond waiving the Fifty-Percent Rule for D Block licenses. *See HRI I*, 198 F.3d at 1238. As set forth above, the FCC stressed, "[T]his [Waiver Order] applies *only* to arrangements for spectrum capacity on the D Block. We are not waiving operation of the [Fifty-Percent Rule] as applied to arrangements that a D Block applicant or licensee may have for use of licenses other than the D Block license." J.A. at 9. This language relates only to the Fifty-Percent Rule—not the 2006 Rules as a whole—and only to the scope of the waiver for a D Block license.[6]

---

[5] (...continued)
Percent Rule would be in the public interest. *Id.*

[6] The quoted language is from paragraph 7 of the order. We underscore the limited and targeted concerns of the Commission—namely, the Fifty-Percent Rule and the D Block—by setting forth its text in full:

> We find that the unique circumstances and obligations of the D Block license justify a waiver of the impermissible material relationship rule under both prongs of the waiver standard.
> (continued...)

17

Indeed, the whole of the Waiver Order does not examine the merits of the general application of the 2006 Rules to the portion of the spectrum covered by Auction 73, much less offer something novel about this subject. It states only that D Block licensees would continue to be governed by the then-existing rules—with the exception of the Fifty-Percent Rule—and that even then, a D Block licensee's purchases of *other* licenses would continue to be governed by the Fifty-Percent Rule. The Waiver Order does not indicate that the FCC

[6](...continued)

> Specifically, we conclude that a D Block applicant or licensee with lease or resale (including wholesale) arrangements with other entities involving more than 50 percent of the spectrum capacity of the D Block license will not be ineligible for designated entity benefits solely on the basis of such arrangements given the unique circumstances and obligations relating to the license. We stress that this waiver applies *only* to arrangements for spectrum capacity on the D Block. We are not waiving operation of the rule as applied to arrangements that a D Block applicant or licensee may have for use of licenses other than the D Block license. Thus, under the terms of this waiver, the existence of arrangements regarding the spectrum capacity of the D Block license that would constitute an impermissible material relationship absent the waiver will not alone make the D Block licensee ineligible for the award of designated entity benefits with respect to other spectrum licenses. Also, because we are not waiving the rule with respect to arrangements for use of the spectrum capacity of licenses *other than* the D Block license, if an applicant or licensee has an impermissible material relationship with respect to the spectrum capacity of any other license(s), the normal operation of the current rules will continue to render it ineligible for designated entity benefits for the D Block license. The waiver we grant herein does not change that.

J.A. ¶ 7, at 9 (footnote omitted).

18

reconsidered the general applicability of the 2006 Rules to all the spectrum covered by Auction 73—as opposed to the applicability of the Fifty-Percent Rule to the discrete area of the spectrum covered by the D block. Accordingly, we are hard-pressed to conclude that, through the vehicle of the Waiver Order, the FCC reconsidered the general applicability of the 2006 Rules regarding the blocks of spectrum covered by Auction 73.[7]

At oral argument, Council Tree made much of footnote thirteen of the Waiver Order, which cites pleadings filed with the Commission by Frontline Wireless, LLC ("Frontline"), a company advocating for relief from the Fifty-Percent Rule for the D Block. *See id.* at 8 n.13 (citing Frontline's petition for reconsideration and oppositions to petitions for reconsideration). Council Tree pointed to footnote thirteen as evidence that the Commission, in the Waiver Order, reconsidered the Fifty-Percent Rule as applied to all blocks of spectrum covered by Auction 73, as opposed to solely the D Block. The Waiver Order cites Frontline's pleadings, however, only in the context of addressing Frontline's

---

[7]    The parties raise the issue of the D.C. Circuit's "reopener doctrine," which renews the statutory time limit for judicial review in cases "where an agency has—either explicitly or implicitly—undertaken to 'reexamine its former choice.'" *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1351 (D.C. Cir. 1995) (quoting *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 151 (D.C. Cir. 1990)). As in *HRI I*, we decline here to address the application of the reopener doctrine. *See* 198 F.3d at 1239 n.8. Because *HRI I* gives us grounds to conclude that the FCC's Waiver Order does not represent a new decision involving reconsideration of the application of the 2006 Rules to all blocks of spectrum covered by Auction 73, we need not decide in this case whether or not to adopt the reopener doctrine.

suggestion that "wholesaling one hundred percent of the D Block spectrum is consistent with the purpose of the Commission's designated entity rules." *Id.* at 8 (internal quotation marks omitted).

Furthermore, even if Frontline had argued for reconsideration of the 2006 Rules, as a whole, as applied to all blocks of spectrum covered by Auction 73, a party cannot reopen an issue simply by arguing it. Contrary to Council Tree's assertion, the unadorned citations in footnote thirteen of the Waiver Order do not, without more, indicate that *the FCC itself*—subsequent to its 700 MHz First Report & Order—reconsidered how the 2006 Rules would be applied to Auction 73.

In sum, the Waiver Order did not reopen the issue of how the 2006 Rules would apply, as a general matter, to Auction 73. Because Council Tree did not file a petition for review of the 700 MHz First Report & Order—in which the FCC *did* decide to apply the 2006 Rules to Auction 73—within sixty days of entry of that order, *see* 28 U.S.C. § 2344, we do not have jurisdiction to review the lawfulness of the FCC's execution of Auction 73 under the 2006 Rules. Accordingly, we dismiss this portion of Council Tree's petition for review.[8]

---

[8] The Commission argues in the alternative that even if Council Tree's challenge to the conduct of Auction 73 pursuant to the 2006 Rules was timely, it nonetheless would be barred by principles of claim preclusion. The Commission asserts that Council Tree is barred from re-litigating its challenge to the application of the 2006 Rules to Auction 73 because the Third Circuit, in *Council Tree III*, considered and rejected on the merits that same claim brought by the

(continued...)

**B**

Council Tree next argues that the FCC's dismissals of its Waiver Reconsideration Petition and its Supplement to that petition were arbitrary and capricious and should be set aside. Council Tree undisputedly timely filed its petition for review of the FCC's action. We address the Waiver Reconsideration Petition and the Supplement in turn and uphold the FCC's dismissals of them.

**1**

The Administrative Procedure Act ("APA") provides that on a petition for review of an agency action,

> the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706(2)(A).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). Under the APA, "we review the underlying agency decision to determine whether it was 'arbitrary, capricious, an abuse of discretion,

---

[8](...continued)
same parties. Because we conclude that we lack jurisdiction over Council Tree's challenge to Auction 73, we do not reach the merits of the Commission's claim-preclusion argument.

or otherwise not in accordance with law.'" *Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1164–65 (10th Cir. 2012) (quoting 5 U.S.C. § 706(2)(A)); *see also Fox Television*, 556 U.S. at 513; *Qwest Corp. v. FCC*, 689 F.3d 1214, 1224 (10th Cir. 2012). Although we review matters of law de novo, *see, e.g.*, *Wyo. Farm Bureau Fed'n v. Babbitt*, 199 F.3d 1224, 1231 (10th Cir. 2000); *Trimmer v. U.S. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999), ultimately, the scope of our review under section 706(2)(A) "is 'narrow'; as [the Supreme Court] ha[s] often recognized, 'a court is not to substitute its judgment for that of the agency.'" *Judulang v. Holder*, --- U.S. ----, 132 S. Ct. 476, 483 (2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

An agency's action is thus arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*State Farm*, 463 U.S. at 43; *accord Hillsdale*, 702 F.3d at 1165.

"Our inquiry under the APA must be thorough, but the standard of review is very deferential to the agency. . . . A presumption of validity attaches to the agency action and the burden of proof rests with the parties who challenge such action." *Hillsdale*, 702 F.3d at 1165 (citations omitted) (internal quotation marks

omitted); *accord Sorenson Commc'ns, Inc. v. FCC* (*Sorenson II*), 659 F.3d 1035, 1046 (10th Cir. 2011); *Sorenson Commc'ns, Inc. v. FCC* (*Sorenson I*), 567 F.3d 1215, 1221 (10th Cir. 2009).

## 2

The FCC dismissed Council Tree's Waiver Reconsideration Petition as moot in light of the Third Circuit's vacatur of the 2006 Rules.  J.A. at 13; *see Council Tree III*, 619 F.3d at 258.  Council Tree objects that the Third Circuit's vacatur of the 2006 Rules "in no way mooted [its] timely claim in 2007 [by means of its Waiver Reconsideration Petition] that Auction 73 could not lawfully be conducted with the [2006] Rules in place."  Pet'rs' Opening Br. at 45.  We disagree.

The goal that Council Tree clearly sought to accomplish through that petition was the *rescission* of the Waiver Order—which would have resulted in the Fifty-Percent Rule applying with full force to D Block licenses, but only to the D Block.  To be sure, in seemingly discordant fashion in a few sentences, Council Tree argued that, under the FCC's rationale, there was no logical basis for not *extending* the Waiver Order to all of the spectrum—that is, lifting the restriction of the Fifty-Percent Rule from the entire spectrum.  But, by this argument, Council Tree sought to demonstrate that the FCC's reasoning in adopting the Waiver Order was arbitrary and capricious.  And the consequence that ineluctably followed, as Council Tree envisioned it, was not the extension of

23

the Waiver Order to all spectrum, but rather, the rescission of the Waiver Order as to the D Block. In sum, Council Tree argued that the Waiver Order arbitrarily and capriciously distinguished between licensees and therefore "must be *overturned*." J.A. at 43 (emphasis added).

Given that Council Tree sought, in its Waiver Reconsideration Petition, the rescission of the Waiver Order and the re-application of the Fifty-Percent Rule to the D Block, we conclude that the FCC's dismissal of that petition as moot, in light of *Council Tree III*, was not arbitrary and capricious. Once the Third Circuit vacated the Fifty-Percent Rule in *Council Tree III*, the FCC was powerless to grant Council Tree the relief it sought—*viz.*, it could not un-waive and reapply the vacated rule. This is the very situation encompassed by the doctrine of mootness. *Cf. Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) ("The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the [action] must [be] dismiss[ed] . . . for want of jurisdiction." (internal quotation marks omitted)); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) ("The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)) (internal quotation marks omitted)); 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.3.1, at 56, 59–60 (3d

24

ed. 2008) ("Mootness is found when events outside the litigation make relief impossible . . . . Events may supersede the occasion for relief, particularly when the requested relief is limited." (footnotes omitted)).  Because the FCC was unable to grant the relief that Council Tree sought in its Waiver Reconsideration Petition, its dismissal of the petition as moot was not arbitrary, capricious, or an abuse of discretion.

**3**

The FCC dismissed Council Tree's Supplement to its Waiver Reconsideration Petition as untimely.  J.A. at 13.  Council Tree argues that the FCC's dismissal was arbitrary and capricious, given that Council Tree demonstrated "adequate grounds for the Supplement's filing."  Pet'rs' Opening Br. at 46.  It maintains that "[t]here was nothing untimely about the Supplement." *Id.* at 47.

FCC regulations provide that a "petition for reconsideration and any supplement thereto shall be filed within 30 days from the date of public notice of the final Commission action."  47 C.F.R. § 1.106(f).  When the Commission has not acted on a pending petition for reconsideration, supplements to it that are filed after the expiration of the thirty-day period are not considered "except upon leave granted" by the Commission.  *Id.*  In other words, there is in fact a thirty-day deadline for filing supplements to petitions, but the FCC has discretion to waive that deadline.  Here, notwithstanding Council Tree's protestations to the contrary,

25

its Supplement was clearly untimely. Council Tree filed the Supplement in May 2011, forty-two months after entry of the Waiver Order in November 2007. And we conclude that the Commission's decision not to entertain the Supplement was not arbitrary or capricious.

In resisting such an outcome, Council Tree explains that it could not have asked the Commission to overturn the results of Auction 73 within thirty days of the Waiver Order because the auction had not yet occurred.[9] Pet'rs' Opening Br. at 47 n.100. Citing other instances in which the Commission allowed supplemental filings, *id.* at 46 n.99, 47–48, Council Tree asserts that it "must be allowed the 'breathing room' to supplement reconsideration petitions with facts and developments which could not have been cited or raised during the initial 30-day window for the filing of such petitions," *id.* at 47. The Commission "reject[ed] Council Tree['s] argument that [its] untimely supplement seeking to challenge the Commission's application of [the 2006 Rules] to Auction 73 . . . could not have been raised earlier. The Commission decided to apply [the 2006 Rules] to Auction 73 in an earlier order [(the 700 MHz First Report & Order)]." J.A. at 14 n.12. The Commission's reasoning is patently reasonable.

Furthermore, contrary to Council Tree's characterization of it, the Supplement does more than expand the facts raised in the Waiver Reconsideration

_____

[9] Council Tree nonetheless waited three years after Auction 73 was conducted, and nine months after the Third Circuit's vacatur of the 2006 Rules, to challenge Auction 73 and the 2006 Rules under which it was conducted.

Petition. Rather, Council Tree used the Supplement to seek entirely different relief than what it sought in the Waiver Reconsideration Petition. Specifically, Council Tree's request for relief changed from a request to rescind the Waiver Order—a step that would effectively apply the Fifty-Percent Rule with full force to the D Block—to a request to rescind Auction 73's results because the Fifty-Percent Rule, among other rules, should not have been applied at all.[10] *Compare id.* at 45–46 (alleging in the Waiver Reconsideration Petition that the FCC promulgated the Waiver Order without requisite notice and comment, and concluding that "the [Waiver Order] should be reconsidered and rescinded"), *with id.* at 102 (attempting in the Supplement to frame the Waiver Reconsideration Petition as having "made clear that, rather than suspend just the [Fifty-Percent] Rule for just one block of spectrum, the FCC needed to suspend *all* of the harmful and unlawful DE rules adopted in 2006 for all spectrum offered in Auction 73"), *and id.* at 107–08 (alleging in the Supplement that "even setting aside [Council Tree's] objections to the special treatment afforded some DEs in the [Waiver

---

[10] As Council Tree emphasized in the Waiver Reconsideration Petition, it "ha[d] been challenging the [Ten-Year] Rule and [the Fifty-Percent Rule] since their . . . adoption by the Commission." J.A. at 45. The Waiver Reconsideration Petition also mentions Council Tree's position that these rules, like the Waiver Order, could not survive notice-and-comment violations. *Id.* However, the fact remains that Council Tree challenged the 2006 Rules in a *separate* petition for review of the Commission's DE Second Report & Order, which ultimately resulted in invalidation of those rules by the Third Circuit. The Waiver Reconsideration Petition at issue in this case only sought rescission of the Waiver Order. *Id.* at 46.

Order, it is] independently entitled to relief based on [its] claim that the [Waiver Order] unlawfully refused to exempt all DEs from the [2006] Rules" and that therefore, "the FCC must vacate the results of Auction 73").

As the Commission explained, while it does sometimes exercise its discretion to consider untimely-filed supplements to timely-filed reconsideration petitions, it disfavors those that seek to substantially expand the scope of relief sought in the reconsideration petition. *Id.* at 14 n.12; *see, e.g.*, *In re Alpine PCS, Inc.*, 25 FCC Rcd. 469, 479–80 ¶ 16 (2010) (dismissing untimely-filed supplements that sought to raise new questions of law not previously presented); *cf. 21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 199–200 (D.C. Cir. 2003) ("Th[is] court has discouraged the [FCC] from accepting late petitions in the absence of extremely unusual circumstances."). The Commission's action here in dismissing the Supplement, in our view, is a reasonable application of this regulatory preference.

In sum, we have considered the Commission's stated reasons for rejecting Council Tree's contentions that it could not have filed the Supplement earlier and that the Supplement was merely an extension of the original Waiver Reconsideration Petition. We conclude that the Commission did not abuse its discretion by dismissing the Supplement and that its dismissal was not arbitrary or capricious.

## III

For the foregoing reasons, we **DISMISS** Council Tree's petition for review, as it pertains to the Waiver Order, and **DENY** its petition, as it relates to the Waiver Reconsideration Order.